**Response Deadline:  July 8, 2008**
**Reply Deadline:  July 18, 2008**
**Hearing Date:  July 25, 2008**

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
(212) 225-2000
James L. Bromley
Jeffrey A. Rosenthal

Attorneys for UBS Securities LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

------------------------------------------------------------------x

| | | |
|---|---|---|
| DELPHI CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -against- | : | Adversary Proceeding |
| | : | Case No. 08-01232 (RDD) |
| APPALOOSA MANAGEMENT L.P., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------------x

| | | |
|---|---|---|
| DELPHI CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adversary Proceeding |
| -against- | : | Case No. 08-01233 (RDD) |
| | : | |
| UBS SECURITIES LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## UBS SECURITIES LLC's MOTION TO DISMISS

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 5

I.  DELPHI'S BREACH OF THE EPCA MANDATES
    DISMISSAL OF ALL CLAIMS .................................................................................. 6

    A. The GM Proposal Constituted An Alternative Transaction Agreement .............. 8

    B. Delphi Executed A Change Of Recommendation ................................................ 9

II. SPECIFIC PERFORMANCE IS NOT AN AVAILABLE REMEDY ....................... 10

    A.  The EPCA Unambiguously Provides For Damages As
        An Exclusive Remedy ......................................................................................... 10

    B.  Delphi Admitted That Specific Performance Is Unavailable ............................. 11

    C.  Delphi Is Not Ready, Willing, And Able To Perform ........................................ 14

        1.  Delphi Has Released The Exit Financing Commitments .............................. 16

        2.  The New GM Agreement Violates The EPCA ............................................. 16

III. DELPHI'S SECTION 1142 MOTION IS UNCOGNIZABLE
     AND DUPLICATIVE ............................................................................................... 17

IV. DELPHI MAY NOT ASSERT AN EQUITABLE
    SUBORDINATION CLAIM ..................................................................................... 18

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Rules**                                                                                           **Page(s)**

Fed. R. Civ. Prod. 12(b)(6) ..............................................................................................   5

**Cases**

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,
No. 04 Civ. 10014 (PKL), 2006 WL 1493132 (S.D.N.Y. May 31, 2006)..........................   14

Carruthers v. Flaum,
388 F. Supp. 2d 360 (S.D.N.Y. 2005)................................................................................   6

Cipriano v. Glen Cove Lodge # 1458, B.P.O.E.,
1 N.Y.3d 53, 60-63 (2003)................................................................................................   14

Clifton Country Road Assocs. v. Vinciguerra,
252 A.D.2d 792 (3d Dep't 1998).......................................................................................   13

Concesionaria DHM, S.A. v. Int'l Fin. Corp.,
307 F. Supp. 2d 553 (S.D.N.Y. 2004)................................................................................   18

Crowley v. VisonMaker, LLC,
512 F. Supp. 2d 144 (S.D.N.Y. 2007)................................................................................   6, 7

Donaldson v. Bernstein,
104 F.3d 547 (3d Cir. 1997)...............................................................................................   13

Durante Bros. and Sons, Inc. v. Flushing Nat'l Bank,
755 F.2d 239 (2d Cir. 1985)...............................................................................................   17

Hadcock Motors, Inc. v. Metzger,
92 A.D.2d 1 (4th Dep't 1983).............................................................................................   14-15

Hirsch v. Arthur Anderson & Co.,
72 F.3d 1085 (2d Cir. 1995)...............................................................................................   5

Huntington Min. Holdings, Inc. v. Cottontail Plaza, Inc.,
60 N.Y.2d 997 (N.Y. 1983) ...............................................................................................   14

In re Chateaugay Corp.,
213 B.R. 633 (S.D.N.Y. 1997)...........................................................................................   17

In re Enron Corp.,
379 B.R. 425 (S.D.N.Y. 2007)...........................................................................................   19

**Page(s)**

In re Galerie Des Monnaies of Geneva, Ltd.,
55 B.R. 253 (Bankr. S.D.N.Y. 1985) ……………………………………………............   13

In re Galerie Des Monnaies of Geneva, Ltd.,
62 B.R. 224 (S.D.N.Y. 1986) ............................................................................................   13

In re Hooker Inv. v. Bonwit Teller,
162 B.R. 426 (Bankr. S.D.N.Y. 1993)..............................................................................   6

In re Manhattan Inv. Fund Ltd.,
343 B.R. 63 (S.D.N.Y. 2006)............................................................................................   7

In re Network Access Solutions, Corp.,
330 B.R. 67 (D. Del. 2005)...............................................................................................   7

In re Rockefeller Ctr. Props. Inc. Sec. Litig.,
311 F.3d 198 (3d Cir. 2002)..............................................................................................   6

In re Stroh,
34 Fed. Appx. 562 (9th Cir. 2002).....................................................................................   13

In re Sunbeam Corp.,
284 B.R. 355 (S.D.N.Y. 2002)..........................................................................................   19

In re Walker,
356 B.R. 877 (S.D. Fla. 2006) ..........................................................................................   7

Jenkins v. Virgin Atl. Airways, Ltd.,
46 F. Supp. 2d 271 (S.D.N.Y. 1999)..................................................................................   6

Matter of W. T. Grant Co.,
4 B.R. 53 (S.D.N.Y. 1980).................................................................................................   18

Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,
500 F.3d 171 (2d Cir. 2007)..............................................................................................   7

Morgan Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.,
269 F. Supp. 2d 206 (S.D.N.Y. 2003).................................................................................   14

New Hampshire v. Maine,
532 U.S. 742 (2001)...........................................................................................................   12, 13

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Cooper's Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003)..............................................................................................   6

**Page(s)**

Papasan v. Allain,
478 U.S. 265 (1986)............................................................................................... 9

Pereira v. Cogan,
No. 00 Civ. 619 (RWS), 2001 WL 243537 (S.D.N.Y. Mar. 8, 2001) ................................ 6

Price v. Kline,
278 A.D. 657 (2d Dep't 1951) .......................................................................... 14

Rahl v. Bande,
328 B.R. 387 (S.D.N.Y. 2005)........................................................................... 5

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,
75 F.3d 801 (2d Cir. 1996)................................................................................ 9

Serova v. Teplen,
No. 05 Civ. 6748 (HB), 2006 WL 349624 (S.D.N.Y. Feb. 16, 2006)................................ 18

United States v. Crowley,
318 F.3d 401 (2d Cir. 2003)............................................................................. 7

Zdanok v. Glidden Company,
327 F.2d 944 (2d Cir. 1964).............................................................................. 8

**Others**

25 Williston on Contracts § 67:15 (4th ed. 2007)............................................................. 15

UBS Securities LLC ("UBS") respectfully submits this Memorandum of Law in support of its Motion, pursuant to Federal Rule of Civil Procedure 12(b)(6) (made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure), to dismiss Delphi Corporation's ("Delphi") Complaint, dated May 16, 2008 (Docket No. 1) (the "Complaint" or "Cmplt.").[1]

## PRELIMINARY STATEMENT

Delphi improperly seeks to blame UBS and the other Plan Investors (A-D Acquisition Holdings, LLC ("ADAH"); Appaloosa Management L.P. ("AMLP"); Harbinger Capital Partners Master Fund I, Ltd.; Harbinger Del-Auto Investment Co., Ltd.; Pardus Special Opportunities Master Fund L.P.; Pardus DPH Holding LLC; Merrill, Lynch, Pierce, Fenner & Smith Inc.; and Goldman, Sachs & Co.) for its own inability to obtain exit financing commitments consistent with the terms of the Equity Purchase and Commitment Agreement dated as of August 3, 2008, as amended on December 10, 2007 (the "EPCA"). Delphi's failure to meet the conditions precedent of the EPCA was incontrovertibly established by this Court's finding that the financing proposal with General Motors Corporation ("GM"), offered for approval by Delphi, was inconsistent with the terms of the EPCA because it was outside of Delphi's ordinary course of business and thus barred by Section 5(p)(ii). Delphi's breach of the EPCA provided cause for ADAH to terminate the EPCA and excused UBS's and the other Plan Investors' duty to perform. Accordingly, Delphi's Complaint against UBS must be dismissed.

---

[1]     UBS joins in and hereby incorporates by reference the Memorandum of Law in Support of Defendants ADAH and AMLP's Motion to Dismiss (the "ADAH Memorandum"); the Memorandum of Law of Harbinger Del-Auto Investment Company Ltd,. Harbinger Capital Partners Master Fund I, Ltd., Pardus DPH Holding LLC and Pardus Special Opportunities Master Fund L.P. in Support of Their Motion to Dismiss; and the Memorandum of Law in Support of the Motion to Dismiss and to Strike of Merrill, Lynch, Pierce, Fenner & Smith Incorporated (together, the "Co-Defendants' Memoranda"), all filed in the consolidated adversary proceeding, No. 08-01232 (RDD). All terms not defined herein shall have the same meaning as in the ADAH Memorandum. By filing this Memorandum of Law, UBS does not waive any of its rights.

Even if UBS had breached the agreement in some manner (which it did not), Delphi's claim for specific performance must be dismissed for several reasons, including the following: (i) the EPCA unambiguously provides for monetary damages, giving Delphi an adequate remedy at law that negates its equitable claim; (ii) Delphi is judicially estopped from alleging that the EPCA permits specific performance; (iii) Delphi fails to state a claim for specific performance, as Delphi does not allege that it is presently ready, willing and able to perform under the EPCA (and in fact, Delphi admits that it is not); and (iv) Delphi's own actions prevent it from performing all of the conditions to the EPCA.

In addition, Delphi's cause of action under Section 1142 fails to state an independent claim, requiring its dismissal. Finally, given that Delphi's claim for equitable subordination merely seeks a remedy rather than substantive relief, the dismissal of Delphi's substantive claims requires its dismissal as well.

## STATEMENT OF FACTS[2]

Along with the other Plan Investors, UBS entered into the EPCA. Cmplt. ¶ 5. Based upon the EPCA, Delphi sought the Court's approval of its Plan of Reorganization (the "Plan"), which was obtained on January 25, 2008. Cmplt. ¶ 26. Delphi's original exit financing structure under the Plan consisted of a senior secured first-lien asset-based revolving credit facility in an aggregate amount of $1.6 billion, a senior secured first-lien term facility in an aggregate amount of $3.7 billion (the "First-Lien Loan") and a senior secured second-lien term facility in the amount of $1.5 billion (the "Second-Lien Loan"), of which up to $750 million would be in the form of a note issued to GM. Cmplt. ¶ 39. Delphi subsequently reduced its planned exit facilities, specifically reducing the Second-Lien Loan from $1.5 billion to $825

---

[2]      Other than facts cited from documents legally cognizable on a motion to dismiss, for purposes of this motion, UBS accepts as true the facts set forth in the Complaint here without agreeing with their accuracy.

2

million, of which up to $750 million would be in the form of a note issued to General Motors. Cmplt. ¶ 40.

   In the weeks subsequent to Plan confirmation, it became clear that Delphi would be unable to obtain exit financing commitments on the terms that it had sought in connection with confirmation of the Plan. As Delphi struggled to consummate the syndication of its exit financing, on February 6, 2008, in a last-ditch attempt to salvage the Plan, Delphi approached the Plan Investors with an updated and increased financing proposal from GM (the "GM Proposal") that included GM's participation in the first and second lien financing in an aggregate amount of over $2.8 billion with the balance of Delphi's financing to be raised in the credit markets. Cmplt. ¶¶ 43-44.

   The Plan Investors expressed their concerns over this proposed modification of the terms of their agreement on February 13, 2008. Cmplt. ¶ 44. In their response, the Plan Investors cited several concerns about the GM Proposal, including the fact that the GM Proposal would leave the company underfinanced, that it contemplated interest rates far higher than the EPCA requirement, that it expanded GM's influence and control over Delphi, and that it anticipated issuing the first and second lien paper at a significant original issue discount. Cmplt. ¶ 45. See also Letter From Thomas Lauria to John (Jack) Butler, dated February 13, 2008, attached as Exhibit ("Exh.") 9 to the Declaration of Stephanie Cohen, dated June 20, 2008, filed in support of the ADAH Memorandum (hereinafter, "Cohen Decl."). The Plan Investors reiterated their view that the GM Proposal was "non-compliant and inconsistent with the EPCA" on February 24, 2008. Cmplt. ¶ 45.

   After wasting an entire month pursuing the GM Proposal, a deal inconsistent with the one to which the Plan Investors had accepted, on March 5, 2008, Delphi filed a motion with

3

the Court under 11 U.S.C. § 1142(b) (the "1142 Motion") to impose the GM Proposal on the

Plan Investors. Cmplt. ¶ 46. The 1142 Motion sought an order finding that the terms of the GM

Proposal were consistent with the EPCA, and directing the Plan Investors to use their best efforts

to support the GM Proposal and to perform the funding obligations contemplated by the EPCA.

See Expedited Motion Under 11 U.S.C. § 1142(b) And Fed. R. Bankr. P. 3020(d) For

Implementation Of Debtors' Confirmed Plan Of Reorganization, attached as Exh. 11 to the

Cohen Decl.

On March 7, 2008, the Court denied the 1142 Motion, finding that the GM

Proposal was, in fact, inconsistent with section 5(p)(ii) the EPCA. Cmplt. ¶ 46. The next day,

the Debtors sent to the Plan Investors a revised exit financing proposal, which was all but

identical to the EPCA-violative GM Proposal, except that Delphi and GM agreed that GM's

participation would be through an unnamed GM subsidiary. See Email chain including email

from John Sheehan to Jim Bolin, dated March 8, 2008, attached as Exh. 1 to the Declaration of

Andrew Weaver, dated June 20, 2008 (hereinafter, "Weaver Decl."). On Sunday, March 9,

ADAH responded to the revised proposal, stating that it did not address the concerns expressed

by the Plan Investors on February 13 and 24, and reserving all rights with respect to "all prior,

present, and future proposals." See Email chain including email from Thomas Lauria to John

(Jack) Butler, dated March 9, 2008, attached as Weaver Decl., Exh. 1. Delphi never modified its

revised proposal to rectify the objections raised by the Plan Investors.

On April 4, 2008, due to Delphi's failure to satisfy several conditions precedent,

ADAH terminated the EPCA for cause. Cmplt. ¶ 49. The next day ADAH provided a

supplemental notice of termination based upon its right to terminate after the occurrence of the

Closing Date Outside Date. Cmplt. ¶ 54. On April 8, 2008, Delphi contacted the lead arrangers

4

of the proposed exit financing and permanently terminated the exit financing commitments.

Letter from Delphi Corporation and Delphi Holdings Luxembourg S.A.R.L. to JPMorgan Chase

Bank, N.A., et al., dated April 8, 2008, attached as Exh. 17 to the Cohen Decl.

On April 24, 2008, the Debtors, in connection with their DIP extension motion,

filed a Notice Of Filing Of GM Agreement Relating To Second DIP Extension Motion in Case

No. 05-44481 (Docket No. 13409). By order dated April 30, 2008, the Court authorized Delphi

to enter into a new agreement with GM, in which GM agreed to advance up to $650 million to

Delphi in advance of the effectiveness of the GM Master Restructuring Agreement and the

Global Settlement Agreement. See Order (I) Supplementing January 5, 2008 DIP Order (Docket

No. 6461) and Authorizing Debtors to (A) Extend Maturity Date of DIP Facility, (B) Enter into

Related Documents, and (C) Pay Fees in Connection Therewith and (II) Authorizing Debtors to

Enter into Arrangement with General Motors Corporation or an Affiliate, filed at Case No. 05-

44481 (Docket No. 13489).

On May 16, 2008, Delphi filed Complaints against UBS and the other Plan

Investors, asserting claims for breach of contract and seeking an order of specific performance.

Cmplt. ¶¶ 62-69. Delphi again seeks an order pursuant to 11 U.S.C. § 1142, this time compelling

UBS to comply with future obligations under the EPCA. Cmplt. ¶¶ 71-76. Finally, Delphi seeks

to have any claim or interest of UBS in respect to the Debtors' estates equitably subordinated or

disallowed. Cmplt. ¶¶ 77-80. UBS now moves to dismiss all of these claims.

## ARGUMENT

On a motion to dismiss pursuant to Rule 12(b)(6), while a court "must accept as

true all of the well-pleaded facts and consider those facts in the light most favorable to the

plaintiff," a complaint should be dismissed when "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." Rahl v. Bande,

5

328 B.R. 387, 399 (S.D.N.Y. 2005) (internal citations and quotations omitted); <u>see also</u> <u>Hirsch v.</u>
<u>Arthur Anderson & Co.</u>, 72 F.3d 1085, 1092 (2d Cir. 1995) (noting that conclusory allegations of
the legal status of defendant's acts or plaintiff's conclusions of law need not be accepted as true).
Moreover, a court should dismiss the complaint if a defense negating its claims appears on the
face of the complaint (or documents otherwise cognizable on the motion). <u>See, e.g.</u>, <u>Official</u>
<u>Comm. of the Unsecured Creditors of Color Tile, Inc. v. Cooper's Lybrand, LLP</u>, 322 F.3d 147,
158 (2d Cir. 2003); <u>In re Rockefeller Ctr. Props. Inc. Sec. Litig.</u>, 311 F.3d 198 (3d Cir. 2002).[3]
Here, the gravamen of Delphi's Complaint against UBS is a claim for breach of contract alleging
a failure by UBS and the other Plan Investors to fund commitments under the EPCA on April 4,
2008. <u>See, e.g.</u>, Cmplt. ¶ 67. As Delphi can prove no sets of facts that would entitle it to relief,
and its Complaint concedes a defense negating Delphi's claims, the Complaint must be
dismissed.

POINT I

<u>**DELPHI'S BREACH OF THE EPCA MANDATES DISMISSAL OF ALL CLAIMS**</u>

To satisfy a claim for breach of contract under New York law, which governs the
EPCA, <u>see</u> EPCA § 16, a plaintiff must establish (1) the existence of a valid contract, (2)
performance by the party seeking recovery, (3) non-performance by the other party, and (4)
damages. <u>Crowley v. VisonMaker, LLC</u>, 512 F. Supp. 2d 144, 151 (S.D.N.Y. 2007) (granting

---

[3]  On a Rule 12(b)(6) motion, this Court may consider: "documents (1) that have been incorporated by
reference in the complaint; (2) of which judicial notice may be taken; or (3) of which plaintiff had knowledge of and
relied upon in bringing the lawsuit." <u>Jenkins v. Virgin Atl. Airways, Ltd.</u>, 46 F. Supp. 2d 271, 275 (S.D.N.Y. 1999)
(internal citations omitted). These include past filings and proceedings in Delphi's bankruptcy case before this
Court. <u>See</u> <u>Carruthers v. Flaum</u>, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (a court "may take judicial notice of
admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that
contradict the party's factual assertions in a subsequent action") quoting <u>Harris v. N.Y. State Dep't of Health</u>, 202 F.
Supp. 2d 143, 173 n.13 (S.D.N.Y. 2002); <u>Pereira v. Cogan</u>, No. 00 Civ. 619 (RWS), 2001 WL 243537, n.2
(S.D.N.Y. Mar. 8, 2001) ("[d]ocuments of which judicial notice can be taken, such as the Chapter 11 filings, may be
considered in determining a motion to dismiss on the pleadings."); <u>In re Hooker Inv. v. Bonwit Teller</u>, 162 B.R. 426,
431 (Bankr. S.D.N.Y. 1993) (court could consider Chapter 11 Plan and Confirmation Order).

6

motion to dismiss a breach of contract claim because plaintiff failed to perform).  It is axiomatic

that a party's performance under a contract is excused "where the other party has substantially

failed to perform its side of the bargain, or, synonymously, where that party has committed a

material breach."  Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 186 (2d

Cir. 2007); see also Crowley, 512 F. Supp. 2d at 151.  Although generally "[t]he issue of whether

a party has substantially performed is usually a question of fact and should be decided as a

matter of law only where the inferences are certain," Merrill Lynch, 500 F.3d at 186, here,

Delphi can prove no set of facts in support of its breach of contract claim against UBS and the

other Plan Investors because, among other reasons, this Court has already ruled that the GM

Proposal was inconsistent with the EPCA, thus confirming the existence of an "Alternative

Transaction Agreement," as unambiguously defined in the EPCA.

   "When a Court has ruled on an issue, that decision should generally be adhered to

by that court in subsequent stages in the same case."  United States v. Crowley, 318 F.3d 401,

420 (2d Cir. 2003); see also In re Manhattan Inv. Fund Ltd., 343 B.R. 63, 67 (S.D.N.Y. 2006)

(noting that "where a court decides upon a rule of law, that decision should continue to govern

the same issues in subsequent stages in the same case") (internal citations and quotations

omitted); In re Network Access Solutions, Corp., 330 B.R. 67, 76 (D. Del. 2005) (finding that,

on a motion to dismiss, the court's determination of a legal issue in the main bankruptcy case is

the law of the case in a subsequent adversary proceeding); In re Walker, 356 B.R. 877, 892 (S.D.

Fla. 2006) ("[T]he issues pertinent to Plaintiffs' claims which have been previously adjudicated

by this Court are now the law of the case.  Pursuant to the doctrine of the law of the case, by

necessary implication the Court's prior decision in these proceedings bar the issues raised by the

Plaintiffs in the Amended Complaint.") (emphasis in original).

7

As Delphi previously sought a ruling from this Court with respect to whether the

GM Proposal violated the EPCA, this Court's unappealed ruling on that issue is the law of the

case for purposes of deciding UBS's motion to dismiss and any further matters in this adversary

proceeding. See Zdanok v. Glidden Company, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here

litigants have once battled for the court's decision, they should neither be required, nor without

good reason permitted, to battle for it again.").

A.    The GM Proposal Constituted An Alternative Transaction Agreement

Section 9(a)(v) of the EPCA prohibited Delphi from entering into an "Alternative

Transaction Agreement," a broadly defined term that included seeking this Court's approval

relating to any "Alternate Transaction." The EPCA also defined "Alternative Transaction"

broadly, as "any plan, proposal, offer or transaction that is inconsistent with [the EPCA]"

(emphasis added).

There is no plausible dispute that Delphi sought this Court's approval of a

proposal; indeed, Delphi's own 1142 Motion defined it as the "Proposal." And there can be no

reasonable debate that the GM Proposal was inconsistent with the EPCA; the Court made the

specific ruling that it was inconsistent with Section 5(p)(ii) of the EPCA, which prohibited

Delphi from entering into any agreement with GM that was, inter alia, outside the ordinary

course of business. March 7 Hearing Tr. at 127:14-18, attached as Exh. 12 to the Cohen Decl.

Thus, Delphi's 1142 Motion, and the Court's decision thereon, confirmed the existence of an

Alternative Transaction Agreement, which unambiguously granted ADAH the right to terminate

the EPCA in accordance with Section 12(d)(v) and excused the Plan Investors' performance

under the EPCA.[4]

---

[4]    Delphi did not merely seek an order from this Court that the GM Proposal complied with the EPCA, but it
went much further in asking the Court for an order directing UBS and the other Plan Investors to use their

8

B.      Delphi Executed A Change Of Recommendation

By proposing an Alternate Transaction, Delphi also executed a "Change of

Recommendation." As a result, Delphi failed to fulfill the condition precedent imposed by

Section 9(a)(vi) of the EPCA, which provides:

> There shall not have been a Change of Recommendation. For purposes of this
> Agreement, a "Change of Recommendation" shall mean . . . the Company or its
> board of directors or any committee thereof shall have approved or recommended,
> or proposed to approve or recommend (including by filing any pleading or
> document with the Bankruptcy Court), any Alternate Transaction.

Not only did it propose to approve and recommend the "GM Proposal" by filing a pleading with

the Bankruptcy Court, but once again, Delphi went much further by seeking to compel the Plan

Investors' acceptance of and support for the Alternate Transaction embodied in the GM

Proposal. Accordingly, in light of the Court's prior ruling, it is incontrovertible that Delphi

failed to satisfy the condition precedent contained in Section 9(a)(vi) of the EPCA.

While Delphi alleges in conclusory fashion that it did not enter into an Alternative

Transaction Agreement, Cmplt. ¶ 51, Second Circuit law is clear that a court need not accept

allegations that are belied by information of which judicial notice may be taken. See San

Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-09

(2d Cir. 1996). Moreover, whether or not Delphi's GM Proposal constituted an Alternative

Transaction Agreement under the terms of the unambiguous EPCA is a question of law, and

Delphi's conclusory allegation is entitled to no deference. See Papasan v. Allain, 478 U.S. 265,

286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion

couched as a factual allegation"). Accordingly, irrespective of Delphi's conclusory allegation,

there is no issue of fact concerning the GM Proposal's inconsistency with the EPCA and thus

---

reasonable best efforts to take all actions to cooperate with Delphi to consummate a closing under the EPCA that
incorporated the GM Proposal.

Delphi cannot now pursue any claim for an alleged breach of the EPCA by UBS or the other

Plan Investors.

**POINT II**

**SPECIFIC PERFORMANCE IS NOT AN AVAILABLE REMEDY**

Even had UBS breached the EPCA (which it did not), for several independent

reasons, specific performance is unavailable under the EPCA as a matter of law. First, the EPCA

unambiguously provides that damages are Delphi's sole remedy in the event of a breach by UBS

or any of the other Plan Investors. Second, Delphi repeatedly admitted to this Court that specific

performance is unavailable and thus is judicially estopped from alleging otherwise. Third,

Delphi fails to plead that it is ready, willing and able to perform under the EPCA at the point

when the Court might order specific performance, a requirement under New York law for such

relief. To the contrary, both by its actions following the termination of the EPCA, and in its

Complaint itself, Delphi necessarily admits the opposite.

A.      The EPCA Unambiguously Provides For Damages As An Exclusive Remedy

Sections 11(b)(w)-(x) of the EPCA unambiguously provides that monetary

damages shall be Delphi's sole remedy for any breach by the Plan Investors:

> [T]he aggregate liability of all of the Investors under this Agreement for any
> reason (under any legal theory), including for any willful breach, for any act or
> omission occurring on or prior to the Subsequent Approval Date [December 10,
> 2007] shall not exceed $100 million, [and] the aggregate liability of all of the
> Investors under this Agreement for any reason (under any legal theory), including
> for any willful breach, for any act or omission occurring after the [December 10,
> 2007] shall not exceed $250 million . . . . The Investors and the Company
> acknowledge that such liability under [the foregoing subclauses] shall be on a
> several and not joint basis with respect to any willful breach occurring on or prior
> to [December 10, 2007]. The Investors and the Company acknowledge and agree
> that such liability under [the foregoing subclauses] shall be on a joint and several
> basis with respect to any willful breach occurring after [December 10, 2007];
> provided, that the aggregate liability of . . . UBS shall not exceed $16,358,805.

Id. §§ 11(b)(w)-(x) (emphasis added).

10

This language limits UBS's "aggregate liability" (i.e. the <u>total</u> extent to which UBS is bound at law or at equity) to a cash payment of up to approximately $16.4 million (out of a payment of up to $250 million for all Plan Investors) for any breach (including willful breach). By using the phrase "aggregate liability" rather than "damages," the parties did not leave room for any other remedy should UBS be found to have liability for an alleged breach of the EPCA.

B.    Delphi Admitted That Specific Performance Is Unavailable

Delphi has readily admitted orally and in writing to this Court that specific performance is not available under the EPCA. First, the Disclosure Statement filed by Delphi, approved by the Court, and distributed to all parties entitled to vote on the Plan states clearly that "if the Debtors were successful in such litigation against the Plan Investors, the [EPCA] expressly caps the Plan Investors' liability for breach thereof at $100 million . . . <u>and there is no specific performance provision. Thus an attempt to 'enforce' the [EPCA] against the wishes of the Plan Investors . . . would yield a maximum recovery of $100 million to the Estates</u> . . . ." First Amended Disclosure Statement With Respect To The First Amended Joint Plan Of Reorganization at DS-121, attached as Exh. 4 to the Cohen Decl. (emphasis added).[5]

Second, in "Debtors' (1) Omnibus Reply to Objections to Delphi-Appaloosa Investment Agreement Amendment Motion and (2) Response to Equity Committee's Emergency Motion to Adjourn Hearing," dated December 5, 2007, Filed at Case No. 05-44481 (Docket No. 11289) ("Delphi's Amended EPCA Reply"), Delphi successfully argued to this Court, in response to objections to the amended EPCA, that Delphi could not enforce the EPCA against the Plan Investors via specific performance. <u>See id.</u> ¶¶ 2, 20-23.

---

[5]    The amount of the aggregate liability cap was increased from $100 million to $250 million after December 10, 2007.

11

Third, at the December 6, 2007 Disclosure Statement hearing, Delphi's counsel stated on the record that in the event of litigation with the Plan Investors, the Plan Investors' damages would be "limited at a hundred million dollars," and that, "if we get into a war with these [P]lan [I]nvestors . . . somebody is going to pay, probably, a hundred million dollars." Dec. 6, 2007 Hearing Tr. at 250:21-251:15, attached as Exh. 16 to the Cohen Decl.

These admissions confirm the agreement of all parties that the aggregate liability provision in the EPCA was the sole remedy available to Delphi in the event of a breach by UBS, and therefore specific performance is unavailable. Accordingly, even were the Court to find any alleged ambiguity in the EPCA regarding the availability of specific performance, Delphi would be judicially estopped from now changing its position to allege that specific performance is an available remedy.

Judicial estoppel applies "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position" and "thereafter, simply because his interests have changed, assume[s] a contrary position . . . to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 742-43 (2001). The Supreme Court developed three factors to consider when making a determination of judicial estoppel: (1) whether the new position is "clearly inconsistent" with the prior position; (2) whether the party was successful in persuading a court to adopt its prior position; and (3) whether the party asserting the inconsistent opinion would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Id. at 750-51.

All three factors are plainly satisfied here. First, Delphi previously asserted on at least three prior occasions that specific performance is not available under the EPCA; it now sues UBS and deliberately alleges the opposite to obtain an unfair advantage. Second, Delphi

12

prevailed in defeating the objections and obtaining Court approval of the amended EPCA on

December 10, 2007.  See "Order Under 11 U.S.C. §§ 105(a), 363(b), 503(b), and 507(a)

Authorizing and Approving Delphi-Appaloosa Equity Purchase and Commitment Agreement

Amendment," dated Dec. 10, 2007, attached as Exh. 8 to the Cohen Decl.  Third, given that the

Plan Investors supported the approval of the EPCA and the Disclosure Statement, it would

impose an unfair detriment to hold them liable for a remedy that Delphi openly proclaimed was

unavailable at a time the Plan Investors could have withdrawn their support or presented a

contrary view to the Court.

        Accordingly, Delphi is estopped from taking this inconsistent position and from

seeking specific performance.  See New Hampshire v. Maine, 532 U.S. at 750-51; Clifton

Country Road Assocs. v. Vinciguerra, 252 A.D.2d 792, 793-94 (3d Dep't 1998).  See also In re

Galerie Des Monnaies of Geneva, Ltd., 55 B.R. 253, 259-60 (Bankr. S.D.N.Y. 1985) (debtor

judicially estopped from commencing a preference action for its own benefit after asserting in

disclosure statement that "[t]he Debtor has discussed the nature of preferential payments and

fraudulent conveyances with its counsel and accountants.  The Debtor's management does not

believe any preferences or fraudulent transfers have occurred.") aff'd 62 B.R. 224 (S.D.N.Y.

1986); In re Stroh, 34 Fed. Appx. 562, 565 (9th Cir. 2002) (debtor judicially estopped from

bringing an action for recovery of partnership earnings because he had previously declared in his

bankruptcy schedules that he had no partnership interests); Donaldson v. Bernstein, 104 F.3d

547, 555-56 (3d Cir. 1997) (party judicially estopped from denying her status as an officer of the

debtor because debtor's amended disclosure statement identified her as the "primary bookkeeper

and financial organizer of the business").

C.      Delphi Is Not Ready, Willing, And Able To Perform

Specific performance is only available under New York law if (1) there is a valid

contract; (2) the moving party has substantially performed under the contract and is willing and

able to perform its remaining obligations; (3) the opposing party is able to perform its

obligations; and (4) the moving party has no adequate remedy at law.  Morgan Stanley High

Yield Sec., Inc. v. Seven Circle Gaming Corp., 269 F. Supp. 2d 206, 221 (S.D.N.Y. 2003);

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, No. 04 Civ. 10014 (PKL), 2006

WL 1493132, at *7 n.11 (S.D.N.Y. May 31, 2006).

Accordingly, where a plaintiff is unable to perform its obligations under a

contract, or cannot show that it is in a position to perform its obligations, specific performance is

unavailable as a remedy.  Cipriano v. Glen Cove Lodge # 1458, B.P.O.E., 1 N.Y.3d 53, 60-63

(2003) (specific performance of contractual right of first refusal unavailable when plaintiff was

not ready, willing, and able to purchase property); Price v. Kline, 278 A.D. 657 (2d Dep't 1951)

(plaintiff could not receive specific performance after post-breach transfer of property due to be

conveyed in transaction to a third party).  See also Huntington Min. Holdings, Inc. v. Cottontail

Plaza, Inc., 60 N.Y.2d 997 (N.Y. 1983) (specific performance unavailable when plaintiff could

not demonstrate ability to perform, even though defendants' anticipatory breach relieved plaintiff

of obligation to tender performance).

It is simply not enough that a party seeking specific performance establishes that

it was ready, willing, and able to perform at some date in the past.  It is a matter of hornbook law

that in order to receive the extraordinary equitable remedy of specific performance, the party

seeking it must be able to demonstrate that it continues to be in a position to uphold its end of the

bargain.  See Hadcock Motors, Inc. v. Metzger, 92 A.D.2d 1, 6 (4th Dep't 1983) (specific

14

performance unavailable when, after breach, plaintiff ceased business operations, violating

condition precedent that he deliver an operating business); Price, 278 A.D. at 657.  See also 25

Williston on Contracts § 67:15 (4th ed. 2007) ("The plaintiff's burden of proving readiness,

willingness, and ability is a continuing one that extends to all times relevant to the contract and

thereafter.").[6]

   In this case, Delphi has not pled and cannot plead that it is currently ready,

willing, and able to perform its obligations under the EPCA.  While the Complaint does make

conclusory allegations that Delphi was capable of performing on April 4, 2008, see Cmplt. ¶ 66,

Delphi actually concedes that it is not able to consummate the transaction if specific performance

is granted, but that it hopes to "reinitiate the rights offering [or] would redevelop the

commitments for the exit financing . . . " to meet a pre-condition to closing after specific

performance is entered.  May 29, 2008 Hearing Tr. at 30:4-10, attached as Exh. 1 to the Cohen

Decl.  There is nothing in the Complaint or the record from which the Court can conclude that

Delphi will be able to close at the moment the Court might order specific performance.  Thus,

insofar as the Complaint purports to state a claim for specific performance, it must be dismissed.

   Moreover, Delphi's post-April 4 conduct was inconsistent with several conditions

precedent to the Plan Investors' obligation to perform under the EPCA.  Accordingly, Delphi

cannot satisfy these conditions to closing and thus is not entitled to specific performance as a

matter of law.  This brief focuses on two such examples that are cognizable in the record before

the Court.

---

[6]  Of course, if a defendant's conduct prevents performance, a plaintiff can still pursue monetary damages. Specific performance, however, is simply unavailable regardless of the reason for plaintiff's inability to perform.

1.    Delphi Has Released The Exit Financing Commitments

Even had Delphi satisfied the conditions precedent under the EPCA before

ADAH terminated the plan, Delphi's termination of the exit financing facilities on April 8, 2008

rendered it no longer able to satisfy a condition of the EPCA. See May 29 Hearing Tr. at 23:5-

24, attached as Exh. 1 to the Cohen Decl. Section 9(a)(xix)(B) of the EPCA states that, as a

condition precedent to the Plan Investors' obligations, Delphi's "undrawn availability under the

asset backed revolving loan facility described in the Financing Letter[7] . . . shall be no less than

$1.4 billion." There is no longer any such revolving loan facility, the result of Delphi's

unilateral choice not to pay the necessary fees to maintain the facility. See id.

Since the loan facilities contemplated by the Financing Letter no longer exist,

Section 9(a)(xix)(B) is not currently, and cannot be, satisfied. Thus, even apart from the express

terms of the EPCA and Delphi's admissions, specific performance is no longer available to

Delphi.

2.    The New GM Agreement Violates The EPCA

The inability of Delphi to satisfy all conditions to the EPCA is further

underscored by the agreement it reached with GM in April 2008, which was approved by this

Court on April 30, 2008 (the "New GM Agreement"). Filed at Case No. 05-44481 (Docket No.

13489).

The New GM Agreement plainly violates Section 5(p)(ii) of the EPCA, which

provides, inter alia, that "the Company shall not enter into any other agreement with GM that . . .

is outside the ordinary course of business." Under the New GM Agreement, GM agreed to

---

[7]    Per Section 3(qq) of the EPCA, the Financing Letter is defined as "an executed 'best efforts' financing
letter from J P  Morgan Securities Inc., JPMorgan Chase Bank, N.A. and Citigroup Global Markets Inc. dated
November 3, 2007 and as filed with the Bankruptcy Court on November 6, 2007 and as approved by the Bankruptcy
Court on November 16, 2007."

advance up to $650 million to Delphi in advance of the effectiveness of the GM Master

Restructuring Agreement and the Global Settlement Agreement. Due both to the size of this

transaction, the fact that it is certainly a one-time event, and the fact that on its face it does not

concern the ordinary business relationship between Delphi and GM or buying and selling

automobile components, the New GM Agreement is clearly a transaction outside the ordinary

course of business.

In electing to enter into an agreement inconsistent with the requirements of the

EPCA, and by seeking this Court's approval for such an agreement – irrespective of Delphi's

reasons for doing so – Delphi has again run afoul of Section 9(p)(ii) of the EPCA. While Delphi

would not lose any claim for damages were it able to prove the Plan Investors' breach, in

deciding to enter into the New GM Agreement, Delphi rendered itself unable to satisfy all

conditions precedent and, therefore, forfeited any right to specific performance.

## POINT III

## DELPHI'S SECTION 1142 MOTION IS UNCOGNIZABLE AND DUPLICATIVE

To the extent Delphi's Complaint purports to bring a "claim" under 11 U.S.C.

§ 1142, Cmplt. ¶¶ 71-76, that section of the Bankruptcy Code merely codifies a bankruptcy

court's inherent power to enforce its own orders. See, e.g., In re Chateaugay Corp., 213 B.R.

633, 640 (S.D.N.Y. 1997). Because Section 1142 does not confer any rights upon Delphi, its

second "claim" for relief is not a cognizable claim and should be dismissed. Furthermore, this

second "claim" for relief is based upon the same operative facts and seeks the same relief as

Delphi's first claim for relief seeking specific performance for an alleged breach of contract.

Compare Cmplt. ¶ 76 (requesting the Court "order UBS to comply with its obligations under the

Plan and the Investment Agreement") with Cmplt. ¶ 69 (asking this Court to "order[] UBS to

17

perform its obligations under the terms of the Investment Agreement"). The Section 1142

"claim" is thus redundant and duplicative of Delphi's request for specific performance, and must

be dismissed. See, e.g., Durante Bros. and Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 251

(2d Cir. 1985) (affirming dismissal of duplicative claim); Concesionaria DHM, S.A. v. Int'l Fin.

Corp., 307 F. Supp. 2d 553, 563-64 (S.D.N.Y. 2004) (dismissing a claim for violation of implied

covenant of good faith and fair dealing as duplicative of a claim for breach of contract because

the underlying allegations must be different than those underlying the accompanying breach of

contract claim); Serova v. Teplen, No. 05 Civ. 6748 (HB), 2006 WL 349624, at *4 (S.D.N.Y.

Feb. 16, 2006) (dismissing claims for breach of fiduciary duty, disgorgement of fees, common

law fraud, and negligent misrepresentation as duplicative of a claim for legal malpractice

because they were based on the same operative facts and seeking the same relief).

Put simply, this Court never ordered the performance of any actions not mandated

by the EPCA. Thus, to the extent that Delphi's other claims fail or are insufficient to establish a

breach of contract or right to specific performance under that contract, there is no prior court

order being violated by UBS.

## POINT IV

## DELPHI MAY NOT ASSERT AN EQUITABLE SUBORDINATION CLAIM

"Equitable subordination is an extraordinary remedy. In its application, the claim

of one creditor may be subordinated to that of another creditor only to the extent necessary to

offset injury or damage suffered by the creditor in whose favor the equitable doctrine may be

effective. The power of equitable subordination may not be exercised in the absence of an injury

to the other claimants." Matter of W. T. Grant Co., 4 B.R. 53, 74 (S.D.N.Y. 1980) (citations

omitted) (emphasis added). Claims for equitable subordination and disallowance are not

18

independent, substantive claims for relief, but rather are merely remedies.[8] Delphi's failure to

state a claim for breach of contract, requiring the dismissal of its first claim for relief, and the

duplicative nature of its second claim for relief predicated upon Section 1142, necessarily

requires the dismissal of Delphi's third claim for relief seeking equitable subordination and

disallowance, claims that cannot stand absent some other tenable, substantive claim.[9]

## CONCLUSION

For the aforementioned reasons, and those set forth in the Co-Defendants'

Memoranda, Delphi's Complaint should be dismissed in its entirety with prejudice.

Dated:  New York, New York
      June 20, 2008

      Respectfully submitted,

      CLEARY GOTTLIEB STEEN & HAMILTON LLP

      By:   /s/ James L. Bromley
         James L. Bromley
         Jeffrey A. Rosenthal
         Members of the Firm

      One Liberty Plaza
      New York, New York  10006
      (212) 225-2000
      JBromley@cgsh.com

      Attorneys for UBS Securities LLC

---

[8]     Moreover, equitable subordination is not penal in nature, see, e.g., In re Enron Corp., 379 B.R. 425, 434 and n.44 (S.D.N.Y. 2007), and therefore cannot form an independent basis for a claimed relief.

[9]     Delphi's claims also fail in that the type of misconduct that warrants equitable subordination or disallowance of a claim is relegated to instances where there has been: (i) fraud, illegality or breach of fiduciary duty; (ii) undercapitalization; or (iii) control or use of the debtor as an alter ego for the benefit of the claimant. See, e.g., In re Sunbeam Corp., 284 B.R. 355, 363 (S.D.N.Y. 2002) (citations omitted). Delphi only pleads (¶¶ 78-79) that UBS has a "fiduciary duty" and is an "insider;" Delphi makes no claim that UBS engaged in fraud, illegality, undercapitalization, or controlled or used Delphi as an alter ego. Moreover, Delphi's conclusory allegation that UBS is a fiduciary is inconsistent with the clear terms of the EPCA, which states that "[t]he Company acknowledges and agrees that the Investors are acting solely in the capacity of an arm's length contractual counterparty . . . and not as a . . . fiduciary to . . . the Company or any other person or entity." EPCA § 3(h). Therefore, as a matter of law, the alleged misconduct cannot warrant equitable subordination or disallowance.

Of Counsel:

     Sean A. O'Neal
     Andrew Weaver
     Stephen T. Kaiser